## Richmond

FRED WILLIAM QUICK, JR. v. WILLIAM M. HARRIS, SHERIFF OF NELSON COUNTY, AND THE SUPERINTENDENT OF THE VIRGINIA STATE PENITENTIARY.

March 4, 1974.

Record No. 730262.

Present, All the Justices.

*John C. Lowe (F. Guthrie Gordon, III; Lowe & Gordon,* on brief), for plaintiff in error.

*Robert E. Shepherd, Jr., Assistant Attorney General (Andrew P. Miller, Attorney General; Sam D. Eggleston, Jr., Commonwealth's Attorney for Nelson County,* on brief), for defendants in error.

COCHRAN, J., delivered the opinion of the court.

This appeal presents for our determination the novel question whether a man accused of a criminal offense has standing to challenge the systematic exclusion of women from the jury process. The matter comes before us in a habeas corpus proceeding.

Fred William Quick, Jr. was convicted on April 14, 1970, of breaking and entering and petit larceny and was sentenced to confinement for one year and for twelve months, respectively, the sentences to run consecutively. We refused to grant him a writ of error by order entered June 15, 1971. Quick's petition for a writ of certiorari was denied by order of the United States Supreme Court of April 3, 1972. His petition for a writ of habeas corpus, in which for the first time he alleged, among other things, discriminatory exclusion of women from jury service in violation of his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and under Article I, Section Eight of the Virginia Constitution (1971), was denied and dismissed by order of the trial court entered October 19, 1972, to which we granted him a writ of error.

Assuming, without deciding, that Quick's allegations of systematic exclusion of women from jury service in Nelson County are supported by the evidence, we must first determine whether the trial court ruled correctly that Quick has no standing to object.

■ For many years it has been generally held that a criminal defendant in a state prosecution has no standing to object on constitutional grounds to exclusion from the jury of a class to which he does not belong. *Fay* v. *New York*, 332 U.S. 261, 287 (1947); *see also Alexander* v. *Louisiana*, 405 U.S. 625, 633 (1972). The exclusion of women from federal juries has been invalidated, however, by the Supreme Court in the exercise of its supervisory power over the administration of justice in the federal courts. *Ballard* v. *United States*, 329 U.S. 187, 193 (1946). *See also Thiel* v. *Southern Pacific Company*, 328 U.S. 217, 225 (1946), where, on the same basis, the systematic exclusion of daily wage earners from a federal jury was invalidated.

Quick, relying on *Peters* v. *Kiff*, 407 U.S. 493 (1972), maintains that the Supreme Court has now accorded standing to a criminal defendant in a state court to object to the systematic exclusion from jury service of any identifiable group, whether or not he belongs to the group. We do not agree. Quick's contention is based upon dicta in the opinion of Mr. Justice Marshall in which only two other justices concurred. The judgment of the Supreme Court in *Peters* v. *Kiff* was that a white defendant in a state court had standing to object to the systematic exclusion of black jurors. But Mr. Justice White, in a separate opinion in which two other justices joined, concurred in the result on the ground that it would implement the statutory prohibition against racial discrimination in jury selection

found in 18 U.S.C. § 243. Mr. Chief Justice Burger and two other justices dissented.

Under these circumstances we conclude that a majority of the Supreme Court does not approve the language in the Marshall opinion which might imply that a male defendant has standing in a state court to challenge the systematic exclusion of women. *See Sanders v. United States,* 357 F. Supp. 1055 (D. Md. 1973). We acknowledge but do not agree with the contrary view expressed in *White* v. *State,* 230 Ga. 327, 331, 196 S.E.2d 849, 853, *appeal dismissed,* 414 U.S. 886 (1973), and in *Mayfield* v. *Steed,* 345 F. Supp. 806 (E.D. Ark. 1972), *aff'd* 473 F.2d 691 (8th Cir. 1973), in each of which cases the court, in reliance on *Peters* v. *Kiff,* accorded standing to a male defendant to object to the exclusion of women. In *White,* however, the Supreme Court of Georgia affirmed the finding of the lower court that sexual discrimination had not been proved, and the Supreme Court of the United States dismissed an appeal for lack of a substantial federal question. In the absence of a majority opinion in *Peters* v. *Kiff,* we construe that decision to be limited to cases involving discriminatory racial exclusion in the jury selection process.

■ Moreover, Quick is entitled to no relief unless *Peters* v. *Kiff* is given retroactive effect. This we decline to do.

The three-fold test for prospectivity when new standards of constitutional dimension are mandated by the Supreme Court requires appraisal of (a) the purpose to be served by the new standards, (b) the extent of reliance on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards. *Stovall* v. *Denno,* 388 U.S. 293, 297 (1967); *Linkletter* v. *Walker,* 381 U.S. 618, 636 (1965); *Fountain* v. *Fountain,* 214 Va. 347, 348, 200 S.E.2d 513-14 (1973); *Potts* v. *Superintendent,* 213 Va. 432, 434, 192 S.E.2d 780, 781 (1972); *Bridgers* v. *Commonwealth,* 211 Va. 370, 371, 177 S.E.2d 526, 527 (1970).

Under this test we find no basis for retroactive application of the doctrine of *Peters* v. *Kiff.* Where, as here, a new constitutional standard is not primarily intended to remedy unfairness at trial proceedings, the purpose of the new standard provides no strong argument for retroactive application. *See DeStefano* v. *Woods,* 392 U.S. 631, 633 (1968), which gave prospective effect only to the rule of *Duncan* v. *Louisiana,* 391 U.S. 145 (1968), that the Sixth Amendment's right to trial by jury extends to a state defendant. The reliance of our courts on old standards and the adverse effect on the administration of justice of retroactive application of the new rule

lead us to conclude that the new rule should not be retroactively applied. Moreover, Mr. Justice White's opinion in *Peters* v. *Kiff* expressly states that the new rule should apply only in that case and in future proceedings. 407 U.S. at 507. *See People* v. *Sirhan*, 7 Cal.3d 710, 497 P.2d 1121 (1972), and *Watson* v. *United States*, 350 F. Supp. 57 (N.D. Ga. 1972), *aff'd* 484 F.2d 34 (5th Cir. 1973), both of which deny retroactive application to *Peters* v. *Kiff* on the basis of Mr. Justice White's opinion.

Cases cited by Quick to support his argument in favor of according full retroactivity to *Peters* v. *Kiff* are distinguishable or unpersuasive. The rule of *Peters* v. *Kiff* was not involved in either *Smith* v. *Yeager*, 465 F.2d 272 (3d Cir. 1972), *cert. den.*, 409 U.S. 1076 (1972), or *Winters* v. *Cook*, 466 F.2d 1393 (5th Cir. 1972), cases in which black petitioners alleged discriminatory exclusion of blacks from jury service. In *Mayfield* v. *Steed*, *supra*, the court gave no reasons to justify retroactive application of its interpretation of the rule of *Peters* v. *Kiff*. Accordingly, we hold that the rule of *Peters* v. *Kiff* shall not be applied to criminal proceedings instituted before June 22, 1972, the date of that decision.

*Affirmed.*