305 So.2d 108 (1974)
CITY OF MONROE
v.
Clifton Arthur FINCHER.
No. 55064.
Supreme Court of Louisiana.
December 2, 1974.
John R. Joyce, Wright & Joyce, Monroe, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John Larry Lolley, City Attorney, for plaintiff-appellee.
CALOGERO, Justice.
The appellant, Clifton Arthur Fincher, was charged by affidavit with having committed the crime of driving while under the influence of intoxicants, second offense, a misdemeanor. La.R.S. 14:98. He was found guilty as charged after a trial and was sentenced to pay a fine of $500.00 (or 50 days in jail in default) and to serve 125 days in jail. The substance of his complaint is that to establish second offense DWI it was error to rely upon his original DWI conviction (a misdemeanor) because that conviction, wherein he had not received, nor waived, the assistance of *109 counsel, was obtained in violation of Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972).
The "brief" which defendant filed in support of his duly perfected appeal, was filed late, although prior to oral argument in this Court, and is entitled "Application for Remedial Writs." We construe the pleading as a brief and his "Assignment of Error" as argument in support of his three duly reserved and perfected bills of exceptions. Each bill relates to the same asserted error noted above. Bill number 1 is to the trial court's overruling defendant's motion to quash the affidavit charging second offender DWI. Bill number 2 was to the introduction into evidence of the minute entry of defendant's first DWI conviction. Bill number 3 was to the failure of the trial court to grant defendant's motion for a directed verdict.
Argersinger held that "absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." 407 U.S. at 37, 92 S.Ct. at 2012, 32 L.Ed.2d at 538. That holding was held to be retroactive in Berry v. City of Cincinnati. 414 U.S. 29, 945 S.Ct. 193, 38 L.Ed. 2d 187 (1973).
The City of Monroe in brief alleges that the defendant did knowingly and intelligently waive his right to counsel at his first conviction. This position is unsupported by the record.
The City also argues that Argersinger is limited to indigents. While the petitioner in Argersinger was an indigent, the holding of the United States Supreme Court is not so limited. See 407 U.S. at 37, 92 S.Ct. at 2012, 32 L.Ed.2d at 538.
Finally, the City argues that Argersinger is retroactive only to those persons serving sentences at the time of the case, quoting a headnote in Berry v. City of Cincinnati, 414 U.S. 29, 94 S.Ct. 193, 38 L. Ed.2d 187 (1973). That decision is not so limited.
This Court has previously considered whether an uncounseled conviction for DWI could be used as a primary conviction in subsequent offender DWI prosecution in State v. Guillotte, 297 So.2d 423 (La. 1974). We held that the prior uncounseled conviction, which in that case resulted in imprisonment, could not be so used in a prosecution of the accused as a repeat offender.
However, we have not previously considered the precise issue here presented, that is, whether a prior uncounseled conviction, where the defendant was not imprisoned, may be used as the primary conviction in a subsequent repeat offender prosecution.
The Argersinger court prefaced its holding that no person could be sent to jail unless he had counsel or had waived counsel by saying:
"We must conclude, therefore, that the problems associated with misdemeanor and petty offenses often require the presence of counsel to insure the accused a fair trial. Mr. Justice Powell suggests that these problems are raised even in situations where there is no prospect of imprisonment. Post, at 2018. We need not consider the requirements of the Sixth Amendment as regards the right to counsel where loss of liberty is not involved, however, for here petitioner was in fact sentenced to jail." 407 U.S. at 36-37, 92 S.Ct. at 2012, 32 L.Ed.2d at 538 (footnote omitted).
The court further explained the import of its decision:
"Under the rule we announce today, every judge will known when the trial of a misdemeanor starts that no imprisonment may be imposed, even though local law permits it, unless the accused is represented by counsel. He will have a measure of the seriousness and gravity *110 of the offense and therefore know when to name a lawyer to represent the accused before the trial starts.
"The run of misdemeanors will not be affected by today's ruling. But in those that end up in the actual deprivation of a person's liberty, the accused will receive the benefit of "the guiding hand of counsel" so necessary when one's liberty is in jeopardy." 407 U.S. at 40, 92 S.Ct. at 2014, 32 L.Ed.2d at 538. (Emphasis added)
Chief Justice Burger concurred, explaining that trial judges "will have to engage in a predictive evaluation of each case to determine whether there is a significant likelihood that, if the defendant is convicted, the trial judge will sentence him to a jail term." 407 U.S. at 42, 92 S.Ct. at 2014, 32 L.Ed.2d at 541.
Turning to the instant case, the statute provides as penalty for a first conviction a fine or imprisonment of between 30 days and 6 months (or both); for a second conviction the penalty escalates to a fine and imprisonment of between 125 days and 6 months.[1] It may readily be seen that under the statutory scheme for DWI, the first conviction causes imprisonment after a second conviction of the accused for DWIthat first conviction ends up in defendant's imprisonment, although such imprisonment does not immediately succeed the first conviction. Before a conviction for any offense may result in imprisonment, an accused must have been represented by counsel or have knowingly and intelligently waived the assistance of counsel, as we appreciate the import of the Argersinger decision.
The record of defendant's first conviction does not establish that he had counsel or had made a waiver of counsel. Thus that conviction may not be used to cause the imprisonment of the defendant under the second offender provision of our DWI statute.
We hold that the prior uncounseled DWI conviction may not be used to subject the accused to prosecution and imprisonment as a repeat DWI offender, whether or not his sentence following that prior conviction included imprisonment. The motion to quash attacking the first DWI conviction is therefore meritorious.
For the reasons assigned the ruling of the trial court denying the motion to quash is reversed, and the motion to quash is granted.
SANDERS, C. J., dissents and assigns written reasons.
SUMMERS, J., dissents and assigns written reasons.
MARCUS, J., dissents and assigns written reasons.
SANDERS, Chief Justice (dissenting).
In a series of decisions beginning shortly after the United States Supreme Court had spoken in Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), this Court held that a conviction and sentence of imprisonment for a misdemeanor is invalid when it is imposed in a case in which the defendant was unrepresented by legal counsel and had not waived counsel. See State v. Guillotte, La., 297 So.2d 423 (1974); State v. Chighizola, La., 281 So.2d 702 (1973); State v. Coody, La., 275 So.2d 773 (1973); City of New Orleans v. Harris, La., 283 So.2d 207 (1973). In City of New Orleans v. Harris, supra, we applied *111 Argersinger v. Hamlin retroactively before the United States Supreme Court held it to be retroactive in Berry v. City of Cincinnati, 414 U.S. 29, 94 S.Ct. 193, 38 L.Ed.2d 187 (1973).
In a series of writ applications, concurrent with the above decisions, a majority of the court adopted the position that the Argersinger rule is not violated by a misdemeanor proceeding without counsel when no actual imprisonment is imposed. Such a conviction is valid, and, if for drunk driving, may be taken into account in a later drunk driving prosecution under LSA-R.S. 14:98. See, e. g., State v. Frazier, La., 295 So.2d 811 (1974); State ex rel. Hutson v. Henderson, La., 294 So.2d 831 (1974); State ex rel. Hutson v. Henderson, La., 291 So.2d 398 (1974); State v. Oliveaux, La., 288 So.2d 356 (1974). In the present case, for the first time, a majority of the court holds invalid prior uncounselled convictions for misdemeanors, irrespective of the sentence actually imposed. The holding, in my opinion, represents an unwarranted extension of Argersinger v. Hamlin.
The precise holding of Argersinger v. Hamlin, supra, is:
"We hold, therefore, that absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial."
By its terms, the holding proscribes a sentence of actual imprisonment for an uncounselled misdemeanor conviction.
This construction of the holding is fortified by the further language of the court:
"Under the rule we announce today, every judge will know when the trial of a misdemeanor starts that no imprisonment may be imposed, even though local law permits it, unless the accused is represented by counsel. He will have a measure of the seriousness and gravity of the offense and therefore know when to name a lawyer to represent the accused before the trial starts.

The run of misdemeanors will not be affected by today's ruling. But in those that end up in the actual deprivation of a person's liberty, the accused will receive the benefit of "the guiding hand of counsel" so necessary when one's liberty is in jeopardy." (Italics ours).
In Cottle v. Wainwright, 477 F.2d 269 (1973), vacated and remanded on other grounds 414 U.S. 895, 94 S.Ct. 221, 38 L. Ed.2d 138, the United States Court of Appeal for the Fifth Circuit held that Argersinger v. Hamlin had no effect on non-imprisonment convictions. The Court stated:
"As we have previously indicated, the district court held that neither of Cottle's two convictions could be considered as evidence by the Parole Commission in a subsequent parole revocation hearing. We are of the view, however, that only the second of Cottle's two convictions must be excluded from the Commissions consideration.
It is noted that as to the first of Cottle's convictions, on April 29, 1968, Cottle received a 20 day suspended sentence, but there is nothing in the record to show that Cottle was imprisoned for this conviction. If that is so, then the rule in Argensinger does not apply.
The Court in Argersinger made it clear that "no person may be imprisoned. . . unless he was represented by counsel." 407 U.S. at 37, 92 S.Ct. at 2012 (Emphasis added). Thus, the court concluded, "The run of misdemeanors will not be affected by today's ruling. But in those that end up in the actual deprivation of a person's liberty, the accused will receive the benefit of `the guiding hand of counsel' so necessary when one's liberty is in jeopardy." at 40, *112 92 S.Ct. at 2014. (Emphasis added). Inasmuch as Cottle, for all that appears, was not deprived of his liberty when he was convicted the first time of public drunkenness, the conviction is not tainted by reason of the fact that he was not afforded counsel to represent him. However, as to his second conviction, which did in fact result in imprisonment, Cottle was constitutionally entitled to counsel, and, none having been provided, that conviction is invalid and may not be considered by the Parole Commission in any future proceeding to revoke Cottle's parole."
See also Ex parte Casarez, Tex.Cr.App., 508 S.W.2d 620 (1974); Lopez v. State, Tex.Cr.App., 507 S.W.2d 776 (1974); Aldrighetti v. State, Tex.Cr.App., 507 S.W.2d 770 (1974).
A basic error in the majority opinion, as I view it, is the conclusion that at least part of the present sentence is for the first drunk driving conviction. Under the statute, as well as the jurisprudence, however, the entire sentence is for the last drunk driving conviction. See State v. George, 218 La. 18, 48 So.2d 265 (1950); State v. Hardy, 174 La. 458, 141 So. 27 (1932); State v. Guidry, 169 La. 215, 124 So. 832 (1929). The first conviction is pertinent in the second trial only to establish that the present charge is for a repetitious offense.
Under the holding of the majority, with which I disagree, the proper disposition would be to set aside only the sentence and remand the case for resentencing of the defendant as a first offender. See State ex rel. Jackson v. Henderson, La., 283 So. 2d 210 (1973).
For the reasons assigned, I respectfully dissent.
MARCUS, Justice (dissenting).
I respectfully dissent. I do not believe it proper to extend the rule of Argersinger retroactively to a conviction where the sentence imposed no imprisonment on an accused not represented by counsel when that conviction is relied upon in a subsequent prosecution of the same accused as a second DWI offender under La.R.S. 14:98. Cf. State v. Guillotte, 297 So.2d 423 (La. 1974) and City of Monroe v. Coleman, 304 So.2d 332, handed down by this court this date.
SUMMERS, Justice (dissenting).
The majority holds that Fincher's multiple offender prosecution could not be based upon his original DWI conviction for, although he was not imprisoned as a result of the original DWI conviction, he was not represented by counsel at that time in violation of the rule enunciated in Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972).
The opinion, therefore, converts the original conviction, valid under the Argersinger rule, to an invalid conviction when an attempt is made to use it as a basis for a multiple offender prosecution. The entire rationale of the majority opinion is based upon the unlikely interpretation of the phrase "end up" used in Argersinger to refer to misdemeanors which will "end up" in the actual deprivation of a person's liberty. It is said that this original DWI conviction would "end up" in the imprisonment of Fincher if it were used as a basis of a multiple offender prosecution.
Such an interpretation is an abuse of word meaning. The reasoning is illogical and, in my view, not supported by the decision in Argersinger. The Argersinger Case does not impose upon the trial judge the obligation of making a predictive evaluation of each case to determine whether a conviction (not involving imprisonment) may be used at some remote date (as in this case) to enhance the penalty of another offense. To the contrary, Argersinger contemplates that the trial judge make a *113 "predictive evaluation of each case to determine whether there is a significant likelihood that, if the defendant is convicted, the trial judge will sentence him to a jail term." 407 U.S. at 42, 92 S.Ct. at 2014. The quoted requirement, expressed in the concurring opinion of Chief Justice Burger, and implicit in the Argersinger majority opinion, makes reference to the case then before the trial judgenot future cases. In effect, in its ruling to the contrary, the majority finds the original conviction invalid despite the fact that it was obtained without violating the Argersinger rule in any respect.
Thus, under the Court's ruling, the judge's predictive evaluation must take into consideration the possibility, however remote, that the case before him may some day be used to enhance the penalty in another case and thereby result in the misdemeanant's imprisonment. I cannot believe that the United States Supreme Court expected the trial judge to make such a predictive evaluation. The Court's decision today will make it necessary for the trial judge to appoint counsel for every misdemeanant, whether the trial before him will result in imprisonment or not. Otherwise a future multiple offender conviction involving imprisonment cannot stand. The result will be to further burden the administration of justice in misdemeanor cases when such a result was never contemplated by Argersinger. This result will render meaningless the intent of the Argersinger Case that "The run of misdemeanors will not be affected . . ." by that decision.
Again this majority unnecessarily extends the rule of a United States Supreme Court case to favor the misdemeanant. This decision is, as pointed out in the fine dissenting opinion of Chief Justice Sanders, an unwarranted extension of the Argersinger rule.
For the reasons assigned here and in the dissent of Chief Justice Sanders, I dissent.
NOTES
[1] For a third conviction, not pertinent to this case, the penalty is imprisonment at hard labor (a felony) for not less than one nor more than 5 years, and for a fourth conviction the penalty is imprisonment at hard labor for not less than 10 nor more than 30 years. Only offenses committed within five years prior to the commission of the charged offense may be employed in assessing penalties. La.R.S. 14:98.